1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                        EASTERN DISTRICT OF CALIFORNIA
10

11   LORI SHEARS,                              No.  2:14-cv-02689-TLN-DAD

12                  Plaintiff,

13          v.                                 **ORDER GRANTING PLAINTIFF'S
                                               MOTION TO REMAND**
14   CITIMORTGAGE, INC.; CLEAR RECON
     CORP.; and DOES 1 through 50, inclusive,
15
16                  Defendants.

17
18          This matter is before the Court pursuant to Plaintiff Lori Shears' ("Plaintiff") Motion to

19   Remand.  (ECF No. 9.)  Defendant Citimortgage, Inc. ("CMI" or "Defendant") has filed an

20   amended opposition to Plaintiff's motion.  (ECF No. 13.)  The Court has carefully considered the

     arguments raised in Plaintiff's motion and reply, as well as Defendant's opposition.  For the
21
     reasons set forth below, Plaintiff's Motion to Remand is GRANTED.
22
         I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY
23
            Plaintiff alleges in her Complaint that on or about March 14, 2006, she and her husband
24
     entered into a mortgage agreement with Citibank, F.S.B., for a Home Equity Line of Credit
25
     ("HELOC") in the amount of $35,100.   (Compl., ECF No. 1 at 12.)  Plaintiff and her husband
26
     later divorced in October 2009.  (ECF No. 1 at 12.)  Subsequently, the HELOC was assigned to
27
     CMI on April 16, 2012, and Defendant Clear Recon Corporation ("CRC"), a corporation with
28

                                                    1

1   California citizenship, became the substituted foreclosure trustee on or around July 8, 2013.

2   (ECF No. 13 at 3.)  In or around October 2012, Plaintiff's ex-husband filed for Chapter 7

3   bankruptcy.  (ECF No. 1 at 13.)  Erroneously believing that the bankruptcy extinguished the debt,

4   Plaintiff did not make payments on the property.  (ECF No. 1 at 13.)  On or around July 8, 2013,

5   Plaintiff received a Notice of Default from CRC and CMI informing her of the possibility of

6   foreclosure if she continued failing to make payments.  (ECF No. 1 at 13.)  Plaintiff alleges that

7   she then contacted CMI, whose representative assured her that she would not lose the home.

8   (ECF No. 1 at 13.)  The home was then sold at a non-judicial foreclosure sale in November 2013.

9   (ECF No. 1 at 13.)  Plaintiff alleges that CMI purposely misled Plaintiff in order to more easily

10  foreclose upon and sell the home.  (ECF No. 1 at 10.)

11      In the Complaint, Plaintiff brings claims solely against CMI for promissory estoppel,

12  negligence, intentional misrepresentation, and negligent misrepresentation.  (ECF No. 1 at 10.)

13  Plaintiff also brings claims against both CMI and CRC for intentional infliction of emotional

14  distress and for a violation of Cal. Bus. & Prof. Code § 17200.  (ECF No. 1 at 10.)

15      Plaintiff initially filed the Complaint in San Joaquin County Superior Court on August 26,

16  2014.  (ECF No. 1 at 9.)  On October 20, 2014, CRC filed its Declaration of Non-Monetary Status

17  ("DNMS") pursuant to Cal. Civ. Code § 2421l, to which Plaintiff did not timely object.[1]  (ECF

18  No. 9 at 2.)  The case was removed to this Court on November 17, 2014, based on diversity of

19  citizenship.  (ECF No. 1 at 1.)  Plaintiff filed the instant motion to remand on December 15, 2014.

20  (ECF No. 9.)  Defendant filed an opposition on January 15, 2015, and an amended opposition on

21  January 16, 2015.  (ECF Nos. 12 & 13.)  Plaintiff filed a reply on January 22, 2015. (ECF No.

22  14.)

23      **II.    STANDARD OF LAW**

24      A district court has diversity jurisdiction "where the matter in controversy exceeds the

25  sum or value of $75,000 … and is between [] citizens of different states."  28 U.S.C. §

26  ───────────────
[1] Filing a DNMS allows a defendant to assert its belief that it has been named in the suit solely in its capacity as
27  trustee, and not as a result of any wrongdoing.  According to § 2924l, if the plaintiff does not object to the DNMS
    within 15 days, the filing party becomes a "nominal" defendant and is not required to fully participate in the
    proceeding.  However, because no such federal mechanism exists, district courts have differed in their treatment of
28  parties who file a DNMS, as will be discussed in more detail below.

1332(a)(1).  Complete diversity of citizenship requires each plaintiff to be a citizen of a different

state from each defendant.  *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

### A. Nominal Party Exception

Diversity is not required between the plaintiff and a "nominal" defendant.  *Strotek Corp.

v. Air Transp. Ass'n. of Am.*, 300 F.3d 1129, 1133 (9th Cir. 2002).  For the purposes of diversity,

a nominal party is defined as one "who has some immaterial interest in the subject matter of a

lawsuit and who will not be affected by any judgment."  *Hartford Fire Ins. Co. v. Harleysville

Mut. Ins. Co.*, 736 F.3d 255, 260 (4th Cir. 2013).  "Defendants who are nominal parties with

nothing at stake may be disregarded in determining diversity, despite the propriety of their

technical joinder".  *See Strotek Corp.*, 300 F.3d at 1133.  Further, "a federal court must disregard

nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the

controversy."  *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980).

"[T]he burden of demonstrating that the defendant is a nominal party rest[s] with the

removing party."  *Latino v. Wells Fargo Bank, N.A.*, No. 2:11-CV-02037-MCE, 2011 WL

4928880, at *2 (E.D. Cal. Oct. 17, 2011) (quoting *Wells Fargo Bank, Nat'l Ass'n v. Charlotte

Overlook Apartments, LLC*, No. 10–411, 2011 WL 2224470, at *3 (W.D. N.C. Apr. 21, 2011)).

*See also Tureaud v. Kephart*, No. 09–7269, 2010 WL 1254372, at *2 (E.D. La. Mar. 24, 2010);

*McAlpin v. RLI Ins. Co.*, 320 F. Supp. 2d 42, 43 (W.D. N.Y. 2004).

### B. Fraudulent Joinder Exception

Another exception "to the requirement of complete diversity is where a non-diverse

defendant has been 'fraudulently joined.'"  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067

(9th Cir. 2001).  Allegations of fraudulent joinder can succeed on a showing that the "plaintiff

fails to state a cause of action against [the] defendant, and the failure is obvious according to the

well-settled rules of the state[.]"  *United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 761

(9th Cir. 2002) (citing *Morris*, 236 F.3d at 1067).  The removing defendant has the burden to

show that the non-diverse defendant is a sham or was fraudulently joined by "clear and

convincing" evidence.  *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1206

(9th Cir. 2007).

3

For purposes of determining fraudulent joinder, courts have employed the pre-*Twombly* "no set of facts" standard of *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), to assess whether under the facts alleged, the plaintiff can state a claim for relief. *See Wong v. Michaels Stores, Inc.*, 2012 WL 718646, at *5 (E.D. Cal. Mar. 5, 2012) ("*Twombly* and *Iqbal* clarify the federal pleading standard set forth by Rule 8(a) but make no comment as to the propriety of pleading under California law. For this reason, courts have refused to apply the *Twombly* and *Iqbal* standards to determine whether a defendant was fraudulently joined"). Further, "a defendant seeking removal based on an alleged fraudulent joinder must do more than show that the complaint at the time of removal fails to state a claim against the non-diverse defendant. [ ] Remand must be granted unless the defendant shows that the plaintiff 'would not be afforded leave to amend his complaint to cure [the] purported deficiency.' " *Nasrawi v. Buck Consultants, LLC*, 776 F. Supp. 2d 1166, 1170 (E.D. Cal. 2011) (citing *Burris v. AT & T Wireless, Inc.*, 2006 WL 2038040, at *2 (N.D. Cal. Jul.19, 2006)).

In determining whether a defendant was joined fraudulently, the courts must resolve "all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party." *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992). Ultimately, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). Indeed, "the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (citing *Smallwood v. Illinois Central R.R. Co.*, 385 F.3d 568, 573–74 (5th Cir. 2003)).

### III.   ANALYSIS

It is undisputed that both Plaintiff and CRC are residents of California. Therefore, complete diversity is not present, and remand must occur, unless Defendants can show that either (1) CRC is a nominal party, or that (2) CRC was fraudulently joined.

4

1        *A.   Nominal Party Status*

2            Defendant's primary claim is that by filing a Declaration of Non-Monetary Status

3    ("DNMS") pursuant to Cal. Civ. Code § 2924l, CRC became a nominal party whose citizenship

4    should be disregarded.  Plaintiff does not dispute that she failed to object to the DNMS within the

5    15-day objection period, but she disagrees with Defendant's assertion that the DNMS converted

6    CRC into a nominal party whose California citizenship therefore does not defeat diversity.

7            In her Motion to Remand, Plaintiff cites *Natividad v. Ocwen Loan Servicing, LLC*, No.

8    2:14–CV–01670-MCE, 2014 WL 6611054, at *3 (E.D. Cal. Nov. 19, 2014), where the court

9    determined that a DNMS does not automatically render a trustee a nominal party for the purpose

10   of diversity.  In *Natividad*, the defendants argued that defendant Sage Point Lender Services, LLC

11   was a nominal party, and therefore its presence did not defeat diversity jurisdiction, because it had

12   filed a DNMS that the plaintiff had failed to oppose.  *Id*.  Ultimately, the court did not agree that

13   the DNMS alone rendered Sage Point a nominal defendant, despite its trustee status.  *Id*.  The

14   court's reasoning depended in part on a classification of a DNMS as a state procedural

15   mechanism, rather than a matter of substantive state law.  *Id.*  The court noted that "[f]iling a

16   DNMS requires no showing by the filing party and only represents that the party has a

17   'reasonable belief' that it 'has been named in the action or proceeding solely in its capacity as

18   trustee, and not arising out of any wrongful acts or omissions on its part in the performance of its

19   duties as trustee.'"  *Id*. (quoting *Segura v. Wells Fargo Bank, N.A.*, No. CV-14-04195-MWF

20   AJWX, 2014 WL 4798890, at *3 (C.D. Cal. Sept. 26, 2014)).  The lack of a requirement of

21   substantive findings has troubled numerous courts, one of which noted that "trustees almost

22   uniformly abuse non-monetary status."  *Kendall v. Wells Fargo Bank, N.A., No*. CV 12-7229 DSF

23   PJWX, 2012 WL 10649162, at *1 (C.D. Cal. Aug. 30, 2012).  Rather than accepting the DNMS

24   at face value, *Natividad* articulated a position that determining nominal party status should

25   require an independent evaluation.  *Natividad*, WL 6611054, at *3.

26           In its opposition, Defendant correctly points out that some district courts have recognized

27   the DNMS as conferring nominal party status on the defendant, as *Natividad* acknowledges.  *See*

28   *Pardo v. Sage Point Lender Servs. LLC*, 14–CV–305, 2014 WL 3503095, at *2 (S.D. Cal. July

5

14, 2014).  Defendant also rightly notes that neither *Natividad* nor the other district court cases cited by Plaintiff are binding on this Court.  However, Defendant does not offer a persuasive justification for its view on the effects of a DNMS, other than to say that some district courts have gone in the other direction.  This Court follows *Natividad* and finds that a DNMS by itself does not render a defendant a "nominal" defendant with regards to diversity.

Defendant further argues that notwithstanding the DNMS, Plaintiff has not proven that CRC is a real party and not a nominal defendant.  However, Defendant appears to forget that, as the removing party, the burden of proving a defendant is a nominal party rests with them.  *Latino*, 2011 WL 4928880, at *2.  CRC's trustee status alone does not persuade the Court, nor do the exhibits provided in the Defendant's opposition.[2]  "Determining nominal party status is a practical inquiry, focused on the particular facts and circumstances of a case, which district courts can be relied upon to apply… ."  *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 260–61 (4th Cir. 2013).  At this juncture, the Court does not find that there is sufficient factual justification to declare that CRC is a nominal defendant.  Therefore, Defendant has failed to meet its burden of establishing nominal party status.

*B.  Fraudulent Joinder*

Defendant argues that even if CRC is not found to be a nominal defendant, its presence in the lawsuit does not defeat diversity because it is a fraudulently joined party.  Defendant bases its argument on assertions that Plaintiff has not stated a valid claim against CRC, and that Plaintiff joined CRC solely to defeat diversity.

Defendant identifies that the joinder of a defendant is fraudulent when "the plaintiff fails to state a cause of action," and "the failure is obvious according to the settled rules of the state."  *United Computer*, 298 F.3d at 761.  Defendant invokes California law to argue that CRC's trustee status protects it from suit, and therefore Plaintiff has no claims under the settled rules of the state.  (ECF No. 13 at 8.)  First, Defendant argues that as a trustee, CRC had no duties to the borrower under California law, but only basic ministerial duties regarding the deed.  (ECF No. 13

---

[2]Pursuant to Plaintiff's objections, the Court notes that the exhibits filed with Defendant's opposition were untimely, however the Court does not find them to be particularly persuasive.

at 8.)  Second, Defendant invokes Cal. Civ. Code § 2924(b), which grants a "litigation privilege" to trustees committing a "good faith error resulting from reliance on information received in good faith from the beneficiary… ."  (ECF No. 13 at 8–9.)  However, this Court is unaware of facts attesting to the good faith quality of CRC's actions.  Simply put, the Court finds Defendant's position untenable; essentially Defendant is asking this Court to believe that there are no possible circumstances in which CRC could be found liable to Plaintiff.  However, considering the breadth of § 17200, the Court cannot agree.

Defendant invokes the 'tender rule' as additional proof that Plaintiff has no plausible claim against CRC.  (ECF No. 13 at 11.)  While Defendant cites cases holding that the tender rule applies when a plaintiff makes a claim for damages in addition to equitable relief, the Court has no reason to believe that tender is required when a plaintiff makes only damage claims and does not seek the equitable remedy of reversing a foreclosure sale.

In her reply, Plaintiff responds by reiterating that her Complaint includes claims against CRC for intentional infliction of emotional distress and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200.  (ECF No. 14 at 8.)  Although Plaintiff does not allege facts to support her IIED claim, she does indicate her belief that CRC was aware of CMI's assurances not to foreclose, and is therefore liable for an unfair business practice under § 17200.  Though CRC's trustee status lends it some protections, it does not make CRC invulnerable to all possible claims. In particular, § 17200 gives broad grounds for claims on the basis of unfairness.  *Kasky v. Nike, Inc.,* 27 Cal. 4th 939, 949 (2002), as modified (May 22, 2002). At this juncture, the Court is not convinced that Plaintiff would be unable to amend her complaint to cure its factual deficiencies, as Defendant is required to show.

The Court recognizes that the bulk of Plaintiff's claims are indeed against CMI. However, the Court is unaware of any facts definitively proving that CRC did not take any actions that could form the basis of Plaintiff's claims against CRC.  For this reason, the Court concludes that there exists the possibility of Plaintiff's recovery against CRC.  Accordingly, Defendants do not meet their burden of showing that CRC was fraudulently joined.

/ / /

IV.     **CONCLUSION**

Based on the foregoing, the Court finds that complete diversity among the parties does not exist.  Accordingly, the Court hereby GRANTS Plaintiff's Motion to Remand.  This case is hereby remanded to the San Joaquin County Superior Court.

IT IS SO ORDERED.

Dated:  July 14, 2015

Troy L. Nunley
United States District Judge